UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAWN ANGELA NORRIS,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-11-3009-CI

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 17.) Attorney D. James Tree represents Dawn A. Norris (Plaintiff); Special Assistant United States Attorney Terrye E. Shea represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary judgment and remands to the Commissioner for additional proceedings.

**JURISDICTION**

On July 10, 2006, Plaintiff protectively filed a Title II[1]

[1]While Plaintiff's counsel indicated Plaintiff filed an application under Title XVI, no application was found and, thus, the claim was adjudicated solely under Title II. (Tr. 12; 131.) In Plaintiff's application for disability benefits she declared, "[t]he

application for a period of disability and disability insurance benefits, alleging disability beginning July 30, 2000. (Tr. 12; 71.) She alleged disability due to left shoulder/neck problems, PTSD, severe depression, COPD, and respiratory deficiency. (Tr. 71.) Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). (Tr. 39-59; 132-33.) A hearing was held on May 7, 2009, at which Paul Morrison, Vocational Expert, and Plaintiff, who was represented by counsel, testified. (Tr. 19-36.) ALJ Donna Montano presided. (Tr. 19.) The ALJ denied benefits on September 9, 2009, and the Appeals council declined review. (Tr. 12-18; 1-3.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 54 years old, separated from her spouse and living with a boyfriend. (Tr. 29.) Plaintiff completed high school.[2] (Tr. 169.) Plaintiff has worked as a sewing machine operator, meat wrapper and warehouse worker. (Tr. 33; 99.) In 2001, Plaintiff worked in Mississippi, as a seamstress in a mattress

SSI program has been explained to me. I understand that I do not qualify. I am not applying at this time and I do not require a formal denial." (Tr. 57.)

[2]A single reference in the record indicates Plaintiff attended college for three years to work as a dental technician. (Tr. 169.) All other references indicate Plaintiff simply graduated from high school. (Tr. 203; 321.)

factory and stopped working when she was laid off. (Tr. 27; 100.) Plaintiff testified that when she tried to return to work, the restrictions on her left shoulder prevented her from performing the sewing work. (Tr. 27.) Plaintiff is left-handed. (Tr. 28.) She testified that she cannot lift more than one pound, and she cannot do repetitive motions or her shoulder will freeze. (Tr. 28.) Plaintiff also testified that she cannot be around other people or she suffers anxiety attacks, and she was hospitalized in Indiana a number of times for psychiatric reasons, including aggression and suicide ideation. (Tr. 28-29; 31.) Plaintiff reported she was a heavy drug user of heroin, methamphetamine and cocaine. (Tr. 169.) She asserted that she has been clean since 1981, but in August 2006, she reported she smoked marijuana "on rare occasions and this has been a long standing pattern," and in October 2006, Plaintiff reported she was smoking marijuana on a daily basis. (Tr. 93; 149; 169; 202; 256.)

**ADMINISTRATIVE DECISION**

ALJ Montano found Plaintiff's date of last insured was December 31, 2005. (Tr. 14.) At step one, he found Plaintiff had not engaged in substantial gainful activity since July 30, 2006. (Tr. 14.) At step two, the ALJ found Plaintiff had medically determinable impairments of "chronic obstructive pulmonary disease (COPD) and depression." (Tr. 14.) The ALJ found that through the date of last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months and, therefore, Plaintiff did not have a severe impairment or combination of impairments. (Tr. 15.) The ALJ concluded that Plaintiff was not

under a disability from the alleged onset date of July 30, 2000, through the date of last insured, December 31, 2005. (Tr. 18.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings,

or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by dismissing her mental impairment as groundless at step two. (ECF No. 14 at 5.) She also contends that the ALJ erred in assessing Plaintiff's credibility. (ECF No. 14 at 19.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No.

18.)

**DISCUSSION**

Plaintiff contends that the ALJ erred by rejecting her mental impairment at step two. (ECF No. 14 at 5.) At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. In addition, the impairment must last, or be expected to last, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909 (durational requirement). The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. See, e.g., *Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. See *Bowen*, 482 U.S. at 145; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)(quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen,* 482 U.S. at 153-54).

In determining whether a claimant's impairments are severe at step two, the ALJ evaluates medical evidence submitted and explains the weight given to the opinions of acceptable medical sources in the record. SSR 85-28. If the medical source is an examining or treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting an uncontradicted opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Where a medical source opinion is based primarily on a claimant's self-reported symptoms, credibility is an appropriate factor to consider in the evaluation of medical evidence at step two. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

**A. Step Two Medical Evidence of Mental Impairment.**

The ALJ found that no medical evidence indicated Plaintiff was disabled, "[a]s for the opinion evidence, the records covering the relevant period do not contain any opinions from any treating or examining physicians indicating that the claimant was disabled or even had impairments that might cause significant limitation in her ability to perform basic work activities." (Tr. 17-18.) Additionally, the ALJ found that Dr. Salazar's late December, 2005, GAF estimate of 60 indicated that Plaintiff had only moderate

impairment in social and occupational functioning. (Tr. 18.) Finally, the ALJ applied the "special technique" required for analyzing mental impairments and found Plaintiff had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace, and no extended episodes of decompensation. (Tr. 15-16.)

Plaintiff provided few medical records predating her date of last insured. Dottie Fuentes, BA, QMHP, examined Plaintiff on December 15, 2005. (Tr. 171-75.) Plaintiff reported that the Effexor was "somewhat helpful" and Elavil was "not helpful at all." (Tr. 171.) Ms. Fuentes diagnosed Plaintiff with major depression, recurrent, moderate and rule out PTSD. (Tr. 173.)

On December 19, 2005, Plaintiff was examined by Nilda Salazar, M.D. (Tr. 169-70.) Dr. Salazar noted Plaintiff stated that she was raised by different foster parents, her childhood was traumatic and she was raped by stepbrother at age 12. (Tr. 169.) Plaintiff also told Dr. Salazar that she took Effexor for two years, but stopped when she moved, but her symptoms worsened, so she found a new doctor and was put on Elavil. (Tr. 169.) Plaintiff reported that she had been on Elavil "for years now" but the depression continued. (Tr. 169.) Dr. Salazar diagnosed Plaintiff with major depressive disorder, recurrent without psychosis, and history of polysubstance dependence in full remission, and assigned Plaintiff a GAF score of 60. (Tr. 170.)

The ALJ's reasons for finding Plaintiff did not have a severe impairment are not supported by the record. First, the ALJ concluded that Plaintiff's depression was "well-controlled by

medication" and that by December 30, 2005, Plaintiff's mental impairment "was under good control with medication and therapy." (Tr. 14; 16.) The records contradict this conclusion. Plaintiff reported that Effexor was somewhat helpful for a time, but Elavil was not helpful at all, and her depression continued. (Tr. 169.) Moreover, in December, 2005, Dr. Salazar recognized that Plaintiff's medication was not working, and changed her medication to Paxil. (Tr. 170.) Under this record, a prescription for new medication gives rise to a reasonable inference that Plaintiff's depression was not "well controlled." Also, Dr. Salazar performed a mental status exam and observed Plaintiff's affect as flat, her mood was depressed and she appeared anxious. (Tr. 170.)

Additionally, the ALJ rejected Dr. Salazar's opinion without identifying the "objective medical evidence" that contradicts that opinion. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). Instead, the ALJ opined that Dr. Salazar's opinion did not indicate Plaintiff was disabled, or had an impairment that might cause significant limitation to perform work activities. (Tr. 17-18.) An impairment is considered not severe only if evidence establishes a "slight abnormality" that has no more than a minimal effect on the ability to work. *Smolen*, 80 F.3d at 1290. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." SSR 85-28.

In this case, the evidence indicates Plaintiff had trouble getting along with others, cried throughout medical examinations, felt hopeless, irritable and has a short fuse with her stepsons.

(Tr. 171-72.) Basic work activities include responding appropriately to supervision, co-workers and usual work situations. SSR 85-28. Plaintiff provided evidence that established she had more than a slight abnormality in her ability to get along with others and appropriately handle daily situations and, thus, perform work activities due to her mental impairment. As a result, the ALJ's rejection of Dr. Salazar's opinion was error, and the resultant conclusion that Plaintiff's mental impairment did not qualify as a severe impairment was error.

**B. Remedy.**

Plaintiff also raised the issue that the ALJ erred in determining credibility. Because the error at step two taints the entire sequential evaluation process, a new sequential evaluation must be undertaken including a new credibility determination. However, the court notes, a step two determination Plaintiff has a severe disability is merely a threshold determination, and Plaintiff may not necessarily succeed on her claim that she is disabled once the complete sequential evaluation is performed. See *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007); *Harman,* 211 F.3d at 1179. Conversely, a reasonable ALJ may find Plaintiff "disabled" upon consideration throughout the sequential evaluation process of all limitations caused by medically determinable impairments (severe and non-severe) in combination (as required by 20 C.F.R. §§ 404.1523, 416.923). *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). On remand, Plaintiff may further develop the record by submitting additional evidence predating Plaintiff's date of last insured, supporting Plaintiff's mental impairment claim. Additionally, if necessary, the ALJ should

consider testimony from an independent medical expert to assist in determining the severity of Plaintiff’s impairments. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED** and the matter is **REVERSED AND REMANDED** to the Commissioner for additional proceedings;

2. Defendant’s Motion for Summary Judgment (ECF No. 17) is **DENIED;**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff,** and the file shall be **CLOSED**.

DATED October 22, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE